LYONS, Judge,
after stating the case, delivered the resolution of the Court as follows:
The first question is, whether the appeal is properly brought up ? - •
We aré of opinion, that the power of the Court of Chancery ceased on the 10th of September, 1794; when the next term after the making of the decree commenced; and, from that period, that it belonged to this Court only to determine on the sufficiency of the security; as the cause was then here, and the Court of Chancery had no longer any controul over it. For, the authority of that Court, according to the true construction of the act of Assembly, *169 expired with the vacation, which followed the decree; and, therefore, its subsequent proceedings were altogether void. Of course, the appeal having been granted in August, 1794, and security given according to law, it must stand.
The next question is, whether a Court of Equity can supply the omission and defect in not recording the marriage articles, within eight months, according to the act of Assembly for regulating conveyances ?
Chancellors in England have gone great lengths in supplying defects in conveyances, as appears from the case of Taylor v. Wheeler, 2 Vern. 564, and other cases cited at the bar; but, we do not know what provisions or reservations there might have been in the act of Parliament or custom referred to in those cases, or in the Bankrupt laws of that country alluded to in the argument.
The act of Assembly, for regulating conveyances in this State, was made to protect creditors and purchasers against secret trusts and latent titles; and for that purpose only: Since it contains a proviso, that the deed, although not proved within eight months, shall be binding between the parties, as it was at common law; and the proviso is an exception which proves the rule, that is to say, that the deed shall not bind any but the parties themselves.
But, when a statute says expressly, that a conveyance shall not bind, can a Court of Equity say that it shall ? Surely, that would be to repeal the act; and, therefore, equity will not interpose in such cases, notwithstanding accident or unavoidable necessity. For, the power of a statute is so great, that it has been said, that even infants would have been bound by the act of limitations, if there had been no exception with regard to them, contained in the statute itself.
It is true, that there are no negative words, in the act of Assembly, to exclude the jurisdiction of a Court of Equity in the present case. But, a Court of Equity must consult the intention of the Legislature as well as Courts .of Law; and when the Legislature have determined a matter with its circumstances, a Court of- Equity cannot intermeddle, or relieve against the express provisions of the statute.
Fraud, however, is still left open for a-Court of Equity to act upon; and if a creditor or purchaser has been guilty of a fraud, by preventing the deed from being recorded, or otherwise, Equity may still relieve; as no person ought *170 to take advantage of his own fraud and obtain the benefit of the statute by undue means. For, the act was intended only to secure fair and honest creditors and purchasers; and not to protect the fraud and circumvention of either of them.
But, as the appellees, in this case,, do not appear to have been parties or privies to any fraud, nor are even charged with it in the bill, they certainly are entitled to the full benefit of the act for securing their just debts; and the marriage agreement cannot now be set up in Equity to defeat them: Especially, as no excuse, for keeping up the marriage articles so long, is even alledged; if any could be admitted.
Rebecca Txtclecr does not shew any title to the slaves she claims; and, if she has any, she may recover at law.
The other questions made are not now necessary to be determined: and, therefore, they are reserved for future discussion.
The decree of the Court of Chancery is to be affirmed.*

[* On the 14th Feb. 1798, i?. Ken. ner, being a feme sole, and seised and possessed, iri her own. right, of certain land and slaves, conveyed the same by deed, in consideration of an intended marriage between herself and Charles Turner, to trastees, to he held in trust for the use of herself, until the marriage should be solemnized, and from and after thereof, to the use of herself and the said Ch. Turner, and th e longest liver of them, and from and after their deaths, to the use of her heirs. The deed purports to be an indenture tripartite, in which Ch. Turner is named as the second party, and as such only, executes the deed, merely for the purpose, as it seems, of testifying his privily and consent;
Soon after the execution of the deed, (in same month) the contemplated marriage took place; whereupon the trustees put the land and slaves, into the possession of Turner, who continued in possession thereof with the approbation of the trustees until Dec.l802, when he died.
The deed was not duly recorded; and Mrs. Turner having remained in possession of the land and slaves, claiming exclusive property therein, and right of possession with the assent of her trustees, the creditors of Turner instituted a suit for their debts against Mrs. Turner, as executrix in her own wrong, of her late husband» And the question was, as to the effect of this deed. The Court held (Washington, J. delivering their opinion,) that, although the deed was not recorded, it protected the property from the creditors of the husband? That the words <e all creditors and subsequent purchasers?' in the 4th sec. act of Virg. passed, Dec. 13, 1792, R. C. 157, ed. 1803, [and which is a re-enactment of act 1785,] only included creditors of, and subsequent purchasers from the grantor. “ The Court has felt some difficulty, said J. Washington, in- consequence of a decision of the Court of Appeals, ifo the case of Anderson v. Anderson; but, it is believed that the judgment in that case was perfectly cor rect, let the particular point which occurs in this cause be settled one way or the other. In that case, the contract was not only executory and rendered void, at law, by the subsequent intermarriage of the parties to the contract, hut it was, at the time when the slaves were taken in execution, per* fectly contingent, whether the wife could ever claim any interest in them,. in opposition to persons deriving title under the husband. For, if the husband should have survived the wife, or if they should have had issue.
*171 the absolute legal estate of the husband, gained by the intermarriage, would have remained unaffected by the deed. There was, therefore, no reason why the creditors of the husband should be prevented from receiving satisfaction of their debts out of his legal estate in the slaves, because it was subject to an equitable, contingent interest in the wife, which might never become effectual. A Court of Equity might well say to her, as you have no remedy at law. for a breach of the contract by the husband, in consequence of not having interposed trustees to protect your rights, and have omitted to record the deed by which creditors and subsequent purchasers might be defrauded, we will not now decree you a specific performance against creditors who have law and equity on their side.” Pierce v. Turner, 5 Cranch, 154.
See Scott et ux. v. Gibbon et al. 5 Munf. 86, 6 Munf. 117.]